Spencer, J.
Several questions have been discussed on the bearing, which 1 shall merely glance at. It has been contended that the respondent is not invested with the rights of Whitney; Codwise, and others, under whose judgments he became a purchaser, at a public sale, made by the sheriff of King^s county,. under executions, issued on those judgments. The statute, it is urged, protects creditors only from fraudulent deeds, and not a person standing in the situation of the respondent.
*502 This proposition is, in my judgment, without any foundation. All the respondent’s right to the land in controversy is derived from and under the judgment under which he purchased ; the judgments are his title; and he is placed, by the judicial sale which took place, precisely in the place of the creditors. If the title acquired under the sheriff’s sale fails, for want of title in the person against whom the execution issues, the purchaser is entitled a to restitution of the money paid.(l N. R. L. 504.) How can it then be pretended, that the respondent is not cloathed with all the rights of the judgment creditors, if they are liable to refund all that has been advanced by. the respondent, on the failure of the title he bought? The idea itself is novel, and unsupported by reason or authority.
It has been incidentally stated by his honour, the chancellor, in the opinion given by him in this cause, that if the deed sought to be avoided as fraudulent, was to be considered fraudulent on the part of C. Sands, the grantor, there would be great difficulty in supporting it, even if the grantee was innocent of any fraud.
I do not understand his honour, as intending to give a decided opinion upon this point; nor was it necessary. I cannot, howqver, refrain from expressing a different inclination of opinion. It seems to me that the statute for the prevention of frauds, which has been universally considered as an exposition of the common law, was intended to avoid deeds contrived and devised fraudulently, for the delaying and defrauding of creditors, in those cases only where both parties participated in the fraud; and, in my apprehension, the 6th section of the statute (1 JV. R. .L. 77.) is a full manifestation of the sense and meaning of that statute : it provides, that that act shall not be construed to impeach or make void any conveyance of lands, made upon good consideration, and bona fide, to any person not having notice or knowledge of the covin or fraud specified in the act. The grantor then may intend a fraud, but if the grantee is a fair, bona fide, and innocent purchaser, his title is not to be affected by the fraud of his grantor. I forbear pursuing this part of the subject any further, and mean only to be understood as not sanctioning the doctrine advanced in the argument, that the fraud of C. Sands is to be visited on the appellant, even if he be a fair and bona fide purchaser.
*503 This brings me to the only remaining part of the case: Is the deed from €• Sands to the appellant of the 21st of February, 1807, under all the facts proved and admitted, to be deemed fraudulent ? I agree so entirely with his honour, the chancellor, in the opinion he has delivered, as to find myself wholly relieved from the necessity of discussing the point, at any great length. His reasoning is so satisfactory, and his elucidations so convincing, that nothing can be added to them : and, in fact, without treading the very ground he has occupied, nothing can be said. We find C. Sands, ir. 1807, under considerable embarrassments. Whitney’s judgment, it is true, was not obtained until February, 1808; but we have a right to infer, that it was obtained in regular course of law, and that the debt must have been due when the deed in question was given; and it is in proof that the suit of Codwise and others was pending when the deed was given. It has been urged, that C. Sands might have had property abundantly sufficient to satisfy his creditors, independently of the lands sold to the respondent. This, however, is not proved; and if it were true, the appellant was bound to make out the fact. Not having done so, the inevitable conclusion is, that C. Sands had no other property out of which his creditors could obtain satisfaction. Under these circumstances, the deed is given by one brother to another, accompanied by circumstances evincive of the most fraudulent intentions. To say nothing of the inadequacy of the consideration, let us see whether a bona fide purchaser would have conducted himself as the appellant has done, in almost every important particular of the transactions. It is not pretended by the appellant, that the consideration money, wffiich was to be 4,500 dollars, was paid at the time the deed was executed, or that it was secured, by any voucher, as evidence of the debt. The appellant states, that 500 dollars was then due him from C. Sands, and that the residue was to be paid as C. Sands should require, either in money or the assumption of his debts; but this pretended arrangement was left in this uncertain state, without any written evidence whatever ; and the appellant says, in his answer, that he paid small sums in 1807, 1808, 1809, and 1810; and" that in the fall of the latter year, he assumed to pay debts owing from C. Sands, to the amount of 2,948 dollars ; not, however, to his creditors, but to C. Sands himself; and it is a very striking feet, that no interest was required by C. Sands for this long de *504 lay- of payment. The appellant took no receipts for three pay-; ments, and the debt, as well as the payments, were left in that loose and unusual way. C. Sands no.t only continued as the ostentible owner, but the deed was not known to exist, until the autumn of the year 1810, nearly four years after its execution. The defendant’s answer as to the time when the deed was executed, and the first knowledge he had of it, is liable to severe remark; and, in my judgment, indicates very clearly the fact, that if it was executed when it bore date, it was done without the appellant’s agency or assent.
C. Sands received the rents, and made erections On the premises, after the date of the deed; and, pending the bargain by which the appellant was to acquire the premises, he covenanted to -make these erections. It is pretended that he acted as an agent to the appellant, but no authority for that purpose is produced ; and, like the rest of the facts, it stands on the naked assertion of the appellant. I cannot take the trouble to go through all the evidence of fraud, nor shall I cite a single adjudged case, but content myself with saying, that I never met with a more marked case of actual, positive fraud; and if such a deed, so contaminated, is allowed to stand, there would be an end of all upright and honest dealing between man and man,, and no creditor would, hereafter, have the least chance of coercing a dishonest debtor to pay his debts.
This being the unanimous opinion of this court, it was, thereupon, ordered, adjudged, and decreed, that the decree of the court of chancery, appealed from in this cause, be affirmed, and that the appellant pay to the respondent their costs to be taxed, and that the record be remitted, &c.
Decree of affirmance»