Harper, J.
We do not think it necessary to investigate the first general question made in the Chancellor’s decree respecting the validity of the bond executed by the deceased Mrs. Hall to Cochran for the -1-0-11 security of Laval’s debt, on which the plaintiffs *have obtained J judgment. Admitting it to be valid, we do not think that the conveyance by Mrs. Hall to the defendant-can be impeached.
The general rules of law on the subject cannot be questioned. Dnder the Stat. 13 Eliz. C. 5, as well as at common law, a conveyance made by a person indebted, with intent to defraud Ms creditors, is void. With respect to the circumstances, however, which shall be sufficient evidence of the fraudulent intention, there is a diversity. If a conveyance merely voluntary be made by a person indebted, ■ this has generally been held sufficient of itself, to establish the fraudulent character of the conveyance. But, if it be upon consideration, and even upon full and adequate consideration, as in Lowry v. Pinson, 2 Bail, 324, still, if it appear that it was with the actual fraudulent intention to defeat creditors, it will still be void. If it was upon very inadequate consideration, this will be one of the circumstances from which the actual fraudulent intention may be inferred. But, however inadequate the consideration, if the transaction be bona fide, it cannot be impeached. This seems to be the sum of the authorities on the subject.
This would appear from the proviso in the Stat. 13 Eliz., that nothing therein contained shall extend to any conveyance made “ upon good consideration and bona fide,” to any persons “not having at the time of such conveyance or assurance to them made, any manner of notice or knowledge of such covin fraud or collusion, as is aforesaid.” In the case of Basset v. Nosworthy, Finch. Ch. R. 182, which was determined on the plea of bona fide purchaser for valuable consideration without notice, it appeared that the purchase was made at a very inadequate price. Lord Nottingham said, the question is not whether the consideration be adequate, but whether it is valuable. This is not inconsistent with Russell v. Hammond, 1 Atk. 15. Three deeds 'were executed in one day. For one of them a consideration of two hundred pounds was shown ; for the second, a consideration of one hundred pounds; for the last, no consideration appeared. Lord Hardwicke thought the last voluntary, though it was urged that all formed one transaction, and that it was inartificial to split them. He thought, however, the fact that the donor had reserved an annuity equal to the probable income for his own life, palpable evidence of fraud. This showed the transaction to be merely colorable, the donor being much indebted at the time. In Doe v. Routledge, Cowper, 105, a *321 Pei’son *not indebted, had made a voluntary conveyance. Desiring -J afterwards to defeat this, he made a nominal sale of the same premises at about one-tenth of the value. It appeared that the last grantee' knew of the former conveyance. Lord Mansfield held the first conveyance §bod, and of the last, said that it should be a bona fide transaction, and a fair purchase in the understanding of mankind; but it was manifestly a mere contrivance, and therefore void. In Stephens v. Olive, 2 Br. C. C. 90, the trustees of the wife having covenanted to indemnify the husband against the wife’s debts, this was held a sufficient consideration for the settlement on her. And so in Nunn v. Wilsmore, 8 T. R. 521, where it is said the Court is not particular as to consideration, if it be bona fide. *31 The whole subject is very fully considered in Copes v. Middleton, 2 Mad. Ch. R. 556, and the cases reviewed. In that case, an uncle, insolvent in' his circumstances, shortly before his death conveyed to his nephew an estate, for a consideration which, according to the testimony, appeared to be about half its value. This was sustained, as from the circumstances it did not appear but that the transaction was bona fide; though the uncle’s kindness to his nephew might be supposed to have had an influence in inducing him to sell at a lower price. It is said a conveyance cannot be invalidated under the Statute 13 Eliz., if the defendant be a bona fide purchaser. Was it known to vendor-and vendee, that the estate was worth more than it was sold for ? It did not appear that the nephew knew the uncle to be indebted. In Sands v. Hildeith, 14 Johns. 493, the opinion of Chief Justice Spencer was expressed, that where there is a consideration, though the intention of the vendor may have been fraudulent, yet, under the statute of Elizabeth, the- conveyance is not void unless the purchaser were a party to-the fraud ; contrary to an intimation of opinion in the same case given by Chancellor Kent, who afterwards (3 Johns. C. C. 318) assented to the suggestion of Justice Spencer.
The cases show sufficiently, that where a consideration is paid, in order to avoid the conveyance, the Court must be satisfied of an actual fraudulent intention to defeat creditors, and in general the preponderance of authority seems to be that the purchaser must be a party to the fraud, notwithstanding what is said by Lord Northington in Partridge v. Gopp, Amb. 596, that it is the motive of the *giver, and not the knowledge of the acceptor, that is to weigh. Now, it is not even con- L tended in the present case that the defendant was a partaker of any actual fraudulent intention, and indeed hardly urged that Mrs. Hall had any such intent. The Court can see no reason to impute such intention to either
It is urged, however, that this, though in form a sale, made upon consideration, was in fact merely a gift. But this is the very question that has been considered throughout. It was in form a sale; money was paid. Was it such substantially and bona fide, or only a contrivance to provide for the defendant at the expense of creditors ? The transaction was this, forty-eight slaves, appraised at about nineteen thousand dollars, and some land, of the value of which we have no very distinct evidence, (a consideration of five thousand dollars, is stated in the deed,) were conveyed by Mrs. Hall to the defendant. He, in return, gave her his bond, conditioned to day off her debts specified in a schedule to the amount of upwards of four thousand dollars, and the grant of an annuity for life of one thousand and sixty dollars. This annuity is equal to the legal interest on the estimated value of the slaves, deducting the amount of the debts. It is urged that it is merely a gift under color of a sale, as if Mrs. Hall had conveyed the property to him in trust, first to pay off certain of her debts, next to pay the rents and profits to herself during life, with remainder to himself after her death ; or, .as if she had conveyed to him, charged with the payment of part of her debts and an annuity of one thousand and sixty dollars, for her life. But by this method of reasoning, every sale of property at an under value might be construed a gift of- the surplus. There is nothing to forbid a sale for an annuity, any more than *32 for money in hand. The distinction between the cases supposed, and the present, is this, in those cases there is not even a colorable consideration moving from the grantor to the grantee. If the estate should not be sufficient to pay the debts, or, if, after payment of the debts, the income should not produce the annuity, the grantee would incur no personal liability. He would lose nothing in any event. If it should be more than sufficient for these purposes, the surplus would be a mere gratuity to him. But in the case before us, if the estate, by any unexpected casualty had perished, the defendant would have been personally liable for the debts, and must have paid the annuity, though the estate had not produced a cent of income. The payment of the debts and the annuity were ^plainly J regarded as the consideration both for the slaves and the land, and they formed one transaction. No doubt such a transaction might be merely colorable and fraudulent, as in the case of Bnissel v. Hammond, where Lord Hardwicke, upon the defendant’s proof of the consideration of two of the deeds, held the third, executed on the same day, to be ■voluntary, and the reserving of an annuity to the annual value of the estate to be a badge of fraud. But in every case the inquiry is, whether it be actually so. In general, I should say, that if a person greatly indebted and knowing himself to be so, should convey his whole property on a greatly inadequate consideration, perhaps such a one as the present, with no ostensible motive but to provide for his family, to one who might be inferred to have knowledge of the circumstances, this would be re.garded as colorable and void. But what are the circumstances of the present case ? The defendant took the utmost pains to be informed of all the debts of Mrs. Hall and provided for their payment, and he seems to have been unaffectedly reluctant to enter into the transaction at all. But, as I have said, no actual fraud is imputed to him. Then with regard to Mrs. Hall, she had the most urgent and substantial motives to make this arrangement, arising from her infirmity and imbecility to manage her property so as to make it produce her a support, and was prompted and urged to it by her confidential friends. There is great reason to doubt whether, at the time, she knew or recollected the existence of this debt. She retained twenty slaves, which, if estimated at the prices at which the .others were appraised, would have been sufficient to pay the debt; and if they had proved insufficient, her annuity might have been made liable, subjecting her to the most cruel embarrassment. Some of the slaves retained were favorite ones, whom she desired to emancipate, and which, of all her property, it should seem, she would have been most unwilling to render liable to be taken and sold for her debts. She was anxious for the comfort of her slaves, and had confidence in the defendant’s kind treatment of them. Under these circumstances, it seems to me that it would be extravagant to impute her conduct to the fraudulent motive of defeating the payment of this debt. We must regard the defendant as a bona fide purchaser for valuable consideration.
The decree is affirmed.
Johnson, J., concurred.