HOOK v. MOWRE *et al.*　　

1. Fraudulent conveyances. A *subsequent* creditor cannot impeach a conveyance made by the debtor on the ground *merely* that it is voluntary.

2. —— ACTUAL FRAUD: QUERE. If a conveyance is *actually fraudulent* as to existing creditors, may it for this *reason alone* be assailed by subsequent creditors?

3. —— ACTUAL FRAUD UPON CREDITOR. Where a prior conveyance is *actually fraudulent*, and the property has been held in secret trust for the grantor, who has been permitted to obtain credit on the faith of his possession, and apparent and asserted ownership, such a creditor may be relieved against the conveyance.

*Appeal from Davis District Court.*

SATURDAY, OCTOBER 15.

EQUITY: FRAUDULENT CONVEYANCES.—I. John Mowre being the owner of the land in controversy, on the 15th day of January, 1858, conveyed the same to his son-in-law, William Hoskins, for the nominal price of $3,000, taking his notes therefor. This conveyance is alleged by the plaintiff to have been fraudulent in fact. This is denied by the defendants, and this is one of the questions in the cause. The facts bearing upon it will appear as far as necessary in the opinion.

II. Afterwards, May 25th, 1859, the defendant, Mowre, with another son-in-law, and one Shelton, became indebted to the plaintiff, Mary E. Hook, for goods bought by Mowre, Shelton and Cowan; and on the 30th day of March, 1860, the plaintiff obtained judgment on this indebtedness; execution issued thereon; and on the 11th day of June, 1861, the land in controversy was sold to the plaintiff as the property of John Mowre, Hoskins not being a defendant in said execution. The land not being redeemed, the plaintiff obtained a sheriff's deed September 25th, 1862, but it was not filed for record until December 2d, 1862. Defendants insist that the plaintiff, as a *subsequent* creditor of Mowre, cannot impeach the prior conveyance to Hoskins, as fraudulent. The further facts, relating to this part of the case, will be set forth in the opinion.

III. On the 4th day of October, 1862, William Hoskins and wife conveyed the land to the defendant, Raley, and on the 14th day of October, 1862, Raley conveyed to his brother-in-law, Cravath. Plaintiff alleges that both Raley and Cravath are *mala fide* purchasers, or at least purchasers with notice of her rights and equities in the land. The object of the suit is to cancel these outstanding conveyances as fraudulent. All of the material allegations of the petition, especially those charging fraud, are denied. A large mass of testimony, covering one hundred and forty pages, was taken, and a decree *pro forma* (the judge, Hon. H. H. TRIMBLE, having been interested as attorney in the cause), was entered by consent, in favor of the plaintiff. Defendants appeal, and the whole cause is before us on its merits.

*C. C. Nourse, S. S. Caruthers,* and *D. P. Palmer* for plaintiff.

*James Raley* for defendants.

DILLON, J. — It will not be practicable, within the reasonable limits of an opinion, to set forth in detail the evidence upon which we base our conclusions of fact. This can only be alluded to in the briefest and most concise manner. The respective attorneys have made the case bristle with points of fact and points of law. The three main questions are those contained in the statement (which see), but these, of course, involve many minor or subordinate ones. The *first* question is this: Was the conveyance of January 15th, 1858, from John Mowre to his son-in-law and co-defendant, William Hoskins, *fraudulent in fact?* On this point, the testimony is uniform and clear. It was made, as Mowre frequently admitted to others, and as he admits, in his sworn statement and testimony, to keep off an old claim in Indiana, founded upon a sale of land. This abundantly appears from the depositions of Jones, McAtee, Ritz, Caruthers and others. The existence of this real or supposed liability furnished a *motive* for conveyance to his son-in-law. No money was paid by the latter. His notes were given, but Mowre swears, at one time, that they were afterwards all returned to Hoskins, and at another, that they were all returned as fast as they fell due. Hoskins never paid anything upon them, and himself admits that Mowre returned to him part of the notes. All of the time Mowre continued to control and enjoy, and apparently to own, the property, the same as if no sale had ever been made. He claimed the property to be his, offered to trade it as his, said that the title was in his son-in-law, but that he could have a deed for it at any time. The testimony of Jones, Shelton, and others, fully connects Hoskins with the purpose of Mowre. Nothing is clearer than that Mowre was the actual owner of the land, and that Hoskins merely held the title for him. Although Mowre may have supposed himself justified in putting the property out of his

hands to avoid liability on the old claim in Indiana, although he swears that he did this in "self. protection," yet the law imperatively pronounces, and inexorably stamps, all transfer made with this motive, that is, with the purpose and intent of hindering and delaying creditors, as fraudulent. The conveyance to Hoskins was not made as an advancement, and was not *bona fide*; and it would not admit of a moment's doubt that creditors of Mowre, who were such *at the time* of the deed to his son-in-law, would be entitled to be relieved against it. This brings us to the *next question*, viz.: Is the plaintiff, who, as we have seen, became a creditor of Mowre *subsequent* to his conveyance to his son-in-law, entitled in law to assail that conveyance for fraud? Before proceeding to answer this question, it is requisite to state some additional facts. This can be done as briefly, and perhaps more satisfactorily than in any other way, by quoting from the deposition of Shelton (one of the firm of Mowre, Shelton & Cowan), which is admitted by the defendant's attorney, "to develope," on this point, "the true state of the case." The debt to the plaintiff arose, as we have seen, in May, 1859, out of the sale of a stock of goods, through Trimble & Baker, her agents, to Mowre, Shelton and Cowan. The circumstances and contract of this purchase, are thus stated by Shelton, in his deposition: "Mr. Mowre and Cowan purchased a stock of goods of Mrs. Mary E. Hook, or Trimble & Baker, her attorneys, for the purpose of putting them in as stock against goods of mine, in the partnership firm of Shelton & Co. (Mowre, Shelton and Cowan), and was to mortgage a certain parcel of land (the land in controversy) claimed by said Mowre as his own. The goods were invoiced, when Baker, upon examining the records, found that Mowre had no title to said land, of which he (Baker) informed me. We then took Mowre into a back room and told him the same. He (Mowre) said the title was properly

in him, and that the deed was made to Hoskins, to avoid some back claim that Mowre was security for, and now that claim was settled; that Hoskins was to make him a deed back of said land. Baker *then* said he could have the goods, provided I would go on the notes, which I consented to do, provided said Mowre would get said deed and *perfect said mortgage*, which he agreed to do soon. Some month or so afterwards, Hoskins came up, and I spoke to him about the same, in the presence of Mowre, which he said was all right, and that he was ready to make a deed at any time, and they promised to attend to it soon." He then testifies, that "in March, 1862, we (Mowre, Cowan & Shelton) had a settlement relative to the farm (the land in dispute), which was sold as Mowre's, on the plaintiff's execution. I paid said Mowre, one house and lot, and some claims on third persons, as remuneration to said Mowre (that is as contribution) for my part of the debt, for which said farm was sold. *I made a deed to the said Hoskins.*" Baker, in his lifetime, on proceedings supplemental to execution, testified that Mowre was to have given the plaintiff a mortgage on the land in dispute, and that he did not know of the conveyance to Hoskins until after the sale of the goods. But as this testimony is of doubtful admissibility, as to some of the defendants in the present suit, we lay it out of the case. It appears clearly from Shelton's testimony that the credit was agreed to be extended to Mowre, upon the belief that he was the owner of the land, and upon his promise to make a mortgage to the plaintiff. When Baker discovered that the title stood in Hoskins, and informed Mowre, he said, "True, it is, but it is my property; that Hoskins held it to enable me to avoid an old claim which is now settled, and I can have a deed back at any time." Baker *then* said he could have the goods, provided Shelton would go on the notes. This Shelton agreed to do, provided Mowre would perfect the said mortgage, which he

agreed to do shortly.   This mortgage, though made to, and for Shelton, would have been available to the plaintiff as security. *Curtis* v. *Tyler et al.*, 9 Paige, 432 ; *Green* v. *Dodge*, 6 Ohio, 80.   Besides, if Mowre had stated that he did not own, and had no interest in the land, it is not probable that Baker would have consented to a completion of the sale. The question now comes back, Can the plaintiff attack the prior conveyance to Hoskins for fraud?   Keep in mind that this conveyance was not *bona fide* when made, but *actually* fraudulent.   Let it be remembered that Mowre was in the possession and apparent ownership of the property ; that he claimed to be the real owner; that credit was agreed to be extended upon the faith of such ownership, and that, at the time the sale of the goods was completed, the plaintiff's agent, so far from being advised that Mowre had no claim to the property, was informed distinctly by him that it was his, and that Hoskins afterwards admitted that it was so ; and Mowre and Hoskins received from Shelton contribution, because the farm had been sold to pay the firm debt.   Under these circumstances, we are clearly of opinion that the plaintiff is in a position to impeach the conveyance from Mowre to Hoskins, as being fraudulent.   As a *rule*, this court has recognized the doctrine that a *subsequent* creditor cannot take advantage of a previous fraud.   *Whitescarver* v. *Bonney*, 9 Iowa, 484; *Fifield* v. *Gaston*, 12 Iowa, 218.   But it was not said, or intended to be said that in no case can this be done; on the contrary, one exception was intimated in the case first cited.   Story, in his learned treatise (Eq. Jur., § 361), lays down the rule thus:  "Where the conveyance is intentionally made to defraud creditors, it seems perfectly reasonable that it should be held void as to all *subsequent* as well as to all prior creditors, on account of ill faith."   So Kent says, that "a voluntary conveyance," executed for the benefit of wife or children, "if made with fraudulent views, would

seem to be void even as to *subsequent* creditors, but not to be so, if there was no fraud in fact." 2 Comst., 442, and authorities there cited. *A fortiori*, would it be void as to subsequent creditors, if fraudulently made to a stranger. The case of *King* v. *Wilcox*, 11 Paige, 589, and many others cited, *infra*, are direct and pointed authorities for the principle, that where a voluntary conveyance is made and received with the *actual intention of defrauding* existing creditors of the grantor, it is not such a conveyance as will protect the property in the hands of the fraudulent grantee, against the claims of the *subsequent* creditors of the grantor. See also to same effect, *Parkman* v. *Welch*, 19 Pick., 231; *Wadsworth* v. *Havens*, 3 Wend., 411; *Fiedler* v. *Day*, 2 Sandf., 594; *Young* v. *Pate*, 4 Yerg., 164; *Damon* v. *Bryant*, 2 Pick., 411; *Smith* v. *Lowell*, 6 N. H., 67; 12 Id., 403; *Mason* v. *Rogers*, 1 Root, 324; *Hester* v. *Wilkinson*, 6 Humph., 215; *Howe* v. *Ward*, 4 Greenl. R., 195; *Taylor* v. *Jones*, 2 Ark., 600; *Benton* v. *Jones*, 8 Conn., 190; *Russell* v. *Hammond*, 1 Id., 15; *Lewis* v. *Love's Heirs*, 2 B. Mon., 345; *Sands* v. *Hildreth*, 14 Johns., 493; *S. C.*, 2 Johns. Ch., 35, 42, more fully; and see particularly Ch. KENT's celebrated judgment in *Reade* v. *Livingston*, 3 Johns. Ch., 498 and 499, where the usual cases in which subsequent creditors may impeach, are stated. *Sexton* v. *Wheaton*, 8 Wheat., 229, and see same case, 1 Am. Lead. Cas., 33, 51, and the valuable note of Mr. Wallace; Roberts on Fraud. Convey., 17, *et seq.*; *Jackson, ex dem. Van Buren*, v. *Myers*, 18 Johns., 425; *Clark* v. *French*, 23 Me., 221, and note distinction drawn by TENNEY, J., between conveyances where there is and is not a secret trust for the grantor; holding that if there is such a trust, subsequent creditors may avoid. *Edwards* v. *Coleman*, 2 Bibb, 204; *Henderson* v. *Dodd*, 1 Benley Eq., 138; *Ridgway* v. *Underwood*, 4 Wash. C. C. R., 128; *Hutchinson* v. *Kelly*, 1 Rob. (Va.), 123. From an examination of these, and other authorities, we deduce

**1. FRAUDU-**
**LENT CON-**
**VEYANCES.** these rules: *First.* On the mere ground that a conveyance is voluntary, where the grantor has no fraudulent views, a *subsequent* creditor cannot impeach it. *Second.* If it was *actually fraudulent* as to existing creditors, the weight of authority seems to be, that for this

**2. —— Ac-**
**tual fraud.** *reason alone,* it may be assailed by subsequent creditors; but without intimating an opinion as to the true doctrine on this point, as it is not necessary in the present case to do so, it is clear, upon the soundest reason and soundest policy; *Third.* That where, as in the case at bar, the prior conveyance is actually fraudulent, the pro-

**3. —— Fraud**
**upon credi-**
**tor.** perty held in secret trust for the grantor, who has been permitted to obtain credit, or draw in creditors on the faith of his possession, apparent and asserted ownership, we say that *such a creditor,* for the plain reason that he has been defrauded, can ask to be relieved against the previous conveyance. It follows that the plaintiff may have relief, unless Raley or Cravath is to be treated as a purchaser for value, and without notice. It is generally held that *bona fide* purchasers stand free of any prior fraud, the fraud as to them being purged. Plaintiff argues that under our statute, actual fraud makes the conveyance from Mowre to Hoskins wholly *void,* the same being a criminal offense. Rev., § 4395. It is not necessary to examine the point, nor the further one, that the deed from Hoskins to Raley was void for want of a stamp; or the yet further one, that plaintiff had *actual possession* of the land, and this was sufficient to charge Raley and Cravath with notice of her rights. We dispose of the case on this ground: That Raley had *actual notice* of the plaintiff's rights is distinctly proved, and indeed admitted. He bought, and professed to buy only the chances. He was to pay the expenses of litigation, and have one-half of the land or its proceeds, if the plaintiff's title under the sheriff's sale could be defeated. We are inclined to think that a fair view of the

whole testimony shows that he assumed, in making the purchase, to act for his brother-in-law, Cravath, and as his agent. If so, though Cravath denies his authority, yet, as he ratified the act, he must take the benefit of it, *cum onere*, and is chargeable with notice of all matters which appear to be within the knowledge and memory of the agent. *Hovey* v. *Blanchard*, 13 N. H., 145, and authorities there cited.

At all events he is not entitled to the standing and rights of a *bona fide* purchaser for value, and without notice.

The decree below ought to be, and is

Affirmed.

COLE, J., having been of counsel, took no part in the determination of the cause.