Gardner v. Cole.

GARDNER v. COLE et al.

1. Fraud; CONVEYANCES: STAT. 27 ELIZ. The Statute of 27 Eliz., designed to protect subsequent good faith purchasers of real estate against fraudulent or feigned and collusive transfers, has never been re-enacted in this State; but as it antedates the settlement of this country, it forms a part of the unwritten or common law.

2. —— CONSTRUCTION OF STAT. 27 ELIZ. The courts in this country have very generally concurred in holding that they could not follow the English courts in the construction of the Stat. 27 Eliz. in so far as those courts held that a subsequent purchaser, with notice, might avoid a prior voluntary conveyance, made in good faith—as, for example, in favor of wife and children—and under circumstances repelling any idea of fraud.

3. —— FRAUDULENT CONVEYANCE INVALID. A conveyance which originates in a fraudulent purpose, and is without any consideration or value, the grantor remaining in possession and claiming ownership, is void as to a subsequent purchaser from such grantor who buys without actual notice of the prior deed, and for value.

4. Recording act: RECORD OF FRAUDULENT DEED. The *constructive* notice arising from the record of a deed which is actually fraudulent, the grantor remaining in possession and claiming and selling the property as his own, to a purchaser for value, without actual notice, does not defeat the right of such subsequent purchaser to avoid an instrument that would otherwise work a fraud upon him.

—— *Semble*, That it would be different in case of a voluntary deed, fair and meritorious, as a reasonable provision for wife or children.

——As to the effect in case of a fraudulent and voluntary deed to a subsequent purchaser who takes with *actual* notice, *quere*.

5. Parties: FRAUDULENT CONVEYANCE. A grantor of real estate by deed containing covenants of warranty may maintain a proceeding in equity to set aside a conveyance by his grantor to another grantee prior to one under which he received title, on the ground that it was fraudulent.

## *Appeal from Johnson District Court.*

### THURSDAY, OCTOBER 4.

FRAUDULENT CONVEYANCES : STAT. 27 ELIZ., &C.—This is a suit in equity against Jerome Cole, Anthony Cole and others, to enjoin a law action brought in behalf of the said Jerome, by his next friend, to recover the rents and profits of a certain lot. Without setting forth the pleadings, it will be sufficient to state that, from them and the exhibits and testimony, the following facts are either admitted or clearly established.

1. That in 1853, Anthony Cole owned and was in possession of eighteen by one hundred and fifty feet of lot two, block eighty-one, Iowa City, worth at that time from three hundred dollars to five hundred dollars, having upon it no improvement except an old blacksmith shop

Gardner v. Cole.

worth twenty-five dollars. At this time and afterward, the said Jerome Cole, an infant son of Anthony, was living with his father.

2. In March, 1853, Anthony was indicted for gaming, and also for selling liquor, and was on the 28th of March arrested on the indictment for gaming, and on the 25th of April, 1853, gave a bail bond in the sum of one hundred dollars, to appear at the next November Term. At what time he gave bond for his appearance to answer to the other indictment, does not clearly appear.

3. At this time, Anthony Cole owed the plaintiff about forty dollars, and Templin about one hundred and twenty-five dollars and some other small debts, and owned little or no property except a small homestead, worth three hundred or four hundred dollars, and the lot in controversy, worth from three hundred to five hundred dollars. His infant son, Jerome, was living with and was supported by him.

4. Under these circumstances, and pending the indictment, Anthony Cole, on the 6th day of July, 1853, executed to his infant son, Jerome, then about two years of age, an instrument in substance this:

" We, Anthony Cole and Mary his wife, in consideration of *one dollar* in hand paid by Jerome Cole, and for the *love and affection* we bear to him as our son, do hereby sell and convey to him for *ten years*, the following premises [describing the property in question], to have and to hold for his use and benefit for the aforesaid term of years." Then follow the usual covenants. This instrument was duly acknowledged and *recorded*, July 8, 1853. There is no claim that there was any other consideration for this instrument than the one therein recited.

5. After the conveyance to his son, Anthony remained in possession as before, *claiming and using the property as his own*, until January 29, 1855, when he and his wife

HARVARD LAW SCHOOL LIBRARY

conveyed to the plaintiff the premises in dispute, without exception or reservation, *with full covenants and without notice of the conveyance to the son,* for fourteen hundred and fifty dollars; the blacksmith shop was removed by Anthony; plaintiff (Gardner), took possession under this conveyance, and made improvements worth twelve hundred dollars; and in March, 1856, he conveyed with warranty to Downey (a defendant in this action), and Downey took possession; and in May following (1856), conveyed to Templin (also a defendant), *with warranty* for the sum of three thousand dollars, and Templin went into possession, and has remained in possession ever since, and the plaintiff (Gardner), and his grantees, Downey and Templin, have paid all the taxes since 1855, and have never been disturbed by the said Jerome, or their right questioned until 1862, when Jerome, by his next friend, brought a law action against Templin for the value of the use of said lot.

6. In the purchase of the lot by Gardner, of Anthony Cole, the debt of the latter to the former was paid by being deducted from the purchase-money. On one of the indictments, Anthony was afterward acquitted, and on the other convicted and fined twenty-five dollars, which he afterward paid, the precise time not appearing.

The answer alleges the debt from Anthony to Templin to have been paid, and the contrary does not appear. Anthony Cole is insolvent.

The present suit was brought in chancery by Gardner, the grantee, with warranty, of Anthony Cole, and the warrantor to Downey, and the petition alleges the above facts, and also, that Templin and Downey refuse to be made plaintiffs, and are consequently made defendants; that Downey and Templin have notified plaintiff to defend the suit of Jerome for rents and profits, and that the plaintiff will be liable, on his warranty, to Downey

and Templin for any amount Jerome may recover. The prayer is for an injunction restraining the prosecution of the action of Jerome for the value of the rents and profits, and the petition alleges that the conveyance from his father, under which Jerome claims, was fraudulent and void.

The answers deny the alleged fraudulent character of the conveyance.

Upon this point, Templin was examined as a witness for the plaintiff (Gardner) and testified as follows :

" I had a conversation with Anthony Cole a short time before the date of his conveyance to Jerome, and after said indictments were found against him. It was in Iowa City, and in my office. He told me he was some in debt, and these indictments might cause him to lose his property, and he wanted to save something, and he wanted to make over the lot in controversy to his son Jerome, and save it for a blacksmith's shop, if he was found guilty. I told him not to do it. He left my office without making the conveyance. I first found out some years afterward that he had made the conveyance to Jerome."

No witnesses were examined in behalf of Jerome, and but two for the plaintiffs, Templin and Downey, the testimony of the latter relating mainly to the value of the property, and of the use of it.

Upon the hearing, the District Court dismissed Gardner's petition, and from the decree he appeals to this court.

*Edmonds & Ransom* for the appellant.

*Fairall & Boal* for the appellees.

DILLON, J.—1. The statute of 13 *Elizabeth* intended to protect *creditors* against fraudulent transfers of property by debtors, and the statute of 27 *Elizabeth*, designed to protect subsequent good faith purchasers of real estate against fraudulent or

1. FRAUD: conveyance; stat. 27 Eliz.

feigned and collusive transfers, have never been legisla-
tively re-enacted in this State. But antedating as these
statutes do the settlement of this country, and being
mainly, if not wholly, declaratory of the common law,
which set a face of flint against frauds in every shape,
they constitute the basis of American jurisprudence on
these subjects, and are, in this State, part of the *unwrit-
ten law*. 4 Kent Com., 463; 1 Story Eq., §§ 352, 353; 1
Am. Lead. Cas., 4th ed., 36.

In the case at bar, the plaintiff is not entitled to be
relieved against the father's conveyance to his son on the
ground of being a *creditor* of the father. He was, it is
true, at one time a creditor, but was paid at the time of
his purchase from the father, of the lot in question. The
act of 13 *Elizabeth* has, therefore, no application to the
case.

The case falls under 27 *Elizabeth*, designed to protect
subsequent purchasers against prior fraudulent alien-
ations of the same property. This latter statute,
in its construction in England, gave rise to much
diversity of opinion, mainly upon this question,
one side holding that the statute made all *voluntary* con-
veyances void against subsequent purchasers for value
*with or without* notice of the voluntary conveyance; the
other side maintaining that it made void prior voluntary
conveyances against purchasers only when the prior vol-
untary conveyance was fraudulent,—that is, if the first
conveyance, though voluntary, was *bona fide*, and the sub-
sequent purchaser bought *with* notice, he could not avoid
it. This question was not definitely settled in England at
the time of our separation from that country. After that
event, the Common law, Chancery and Exchequer courts
concurred in deciding that, under 27 *Elizabeth*, a subse-
quent purchaser, for value, might set aside a prior
voluntary conveyance, though *bona fide* made to a son or

wife, even though such purchaser had notice at the time of his purchase of such voluntary conveyance. *Doe* v. *Manning*, 9 East., 59; *Evelyn* v. *Templar*, 2 Bro., 148, 149; *Doe* v. *Martin*, 4 Bos. & Pul., 332; *Doe* v. *Hopkins*, cited 9 East., 70; *Palverloft* v. *Same*, 18 Ves., 84; and see also recent case of *Tarlton* v. *Liddell*, 7 Eng. L. & Eq., 360, 375, 1851.

The statute of 27 Elizabeth in substance declares void every conveyance, &c., of lands made and to be made *for the intent and purpose to defraud and deceive such person as shall purchase land so before conveyed.*

Now, the ground upon which the English decisions above referred to have gone is, that the subsequent sale by the grantor is considered as proving conclusively that the voluntary deed was executed with the fraudulent intent to deceive subsequent purchasers. Per MARSHALL, Ch. J., in *Cathcart* v. *Robinson*, 5 Pet., 265, 279; 1 Am. Lead. Cas., 47.

The English doctrine when applied against *bona fide* voluntary alienees, in favor of subsequent purchaser *with notice*, was manifestly a source of fraud and injustice. Why should one, with full knowledge that a man not indebted had fairly made a reasonable provision for a wife or child by a voluntary conveyance, be permitted to purchase of them the same property and hold it as against the wife and child?

The subsequent purchaser in such case is not, in the language of the statute, *defrauded and deceived*, for he buys with actual knowledge. And how can a man be defrauded or deceived by a transaction of which he has notice when he buys? This construction, instead of preventing frauds, worked them, by enabling a party "intentionally to defeat the fair claims and expectations of a prior grantee." (4 Kent Com., 463.)

Influenced by these considerations, the courts in this country (while their decisions are not on many points harmonious) have very generally concurred in holding, that, as they were not bound to do so, they would not follow the English courts, in so far as those courts held that a subsequent purchaser *with* notice might avoid a prior voluntary conveyance made in good faith; as, for example, in favor of wife or children, and under circumstances repelling any idea or imagination of fraud.

The result of the American decisions on this subject is thus given by Mr. Wallace, one of the learned editors of the American Leading Cases (vol. 1, p. 47, 4th ed.): "A conveyance *actually fraudulent* is void against a subsequent purchaser for a valuable consideration, even *with* notice; and a voluntary conveyance is presumptively fraudulent against a subsequent *bona fide* purchaser *without* notice; that is, a subsequent sale to a *bona fide* purchaser without notice. is evidence that a prior voluntary conveyance was fraudulent; but a voluntary conveyance [if not fraudulent in fact] is (at least according to the decisions in some of the States) not void against a subsequent purchaser *with* notice. In others, however, the general rule is stated, that a voluntary conveyance, as against a subsequent *bona fide* purchaser for a valuable consideration, with or without notice, is fraudulent." (We omit the cases referred to, which, upon examination, we find fully to sustain the text.)

*3.——frau-dulent con-veyance invalid.*

In view of the course of decision in this country, and the reasons for it, it is our opinion that the rights of the plaintiff are, under the facts of this case, superior to those of Jerome Cole. What are these facts? They are:

1. That the conveyance by the father to Jerome was, as shown by the evidence, *actually fraudulent*, and did not originate in an honest desire and purpose to make a settlement upon or provision for him. This is shown by

Gardner v. Cole.

the uncontradicted testimony of Templin. If not true, why was not the evidence of Anthony Cole, who was alive, taken to contradict him? Anthony was in debt, had criminal prosecutions pending against him, showing a motive to make a fraudulent transfer, and making Templin's evidence extremely probable. Then, the nature of the interest conveyed, and the age of the son, tend to show the father's purpose to be to protect himself, and not to benefit the child. Then, again, the conveyance to the son, as against a *bona fide* purchaser, is held to be at least presumptively fraudulent, and no evidence was offered by the son to repel this presumption. Therefore we conclude that the conveyance was actually fraudulent.

2. This conveyance was purely and confessedly *voluntary*.

3. The father, after this conveyance to the son, remained in possession, claiming the property as his own, using it as his own, and, finally, about a year and a half afterward, selling it as his own, *giving no notice of his son's right*.

4. The plaintiff was a *bona fide* purchaser for full value, without any *actual* notice of the son's right, or of the prior voluntary conveyance to him.

Under these circumstances, this court has recently decided, that a *subsequent* creditor of the father could have avoided this conveyance to the son. *Hook* v. *Mowre*, 17 Iowa, 195, 201, and cases cited, and 202, proposition *third*.

And all courts hold that a subsequent purchaser has rights as high, and some hold that he has even higher rights than a subsequent creditor. *Salmon* v. *Bennett*, 1 Conn., 557; *S. C.*, 1 Am. Lead. Cas. *supra*, and notes; Willard's Eq., 234, 235; *Verplank* v. *Sterry*, 12 Johns., 538, per SPENCER, J.; *Lewis* v. *Love's Heirs*, 2 B. Mon., 345, 347; Rob. Fraud. Con., 473, and cases.

Upon a pretty extensive examination of the cases we have found none, no, not one, which would sustain the conveyance in question under the circumstances stated.

"All the cases admit," says WILDE, J. (*Clapp* v. *Leatherbee*, 18 Pick., 131, 137), "that if there is any fraud in a voluntary conveyance, or if it is merely colorable, it can never be set up against a subsequent purchaser for value."

So in a prior case in the same State, the court, in relation to a voluntary conveyance which was held to be intentionally fraudulent, remarked, "That deed conveyed his (the grantor's) title to the plaintiff as against the grantor and every other person, unless it was fraudulent at the time of its execution, in which case it was void against creditors and subsequent purchasers. *Ricker* v. *Ham*, 14 Mass., 139.

What we do decide is, that where the first conveyance originates in a fraudulent purpose, and is without any consideration of value, and the grantor remains in possession, and claiming ownership, sells the property as his own to a party who buys without actual notice of the prior deed, and pays value, the latter purchaser may avoid the prior voluntary and fraudulent conveyance. See on this point *Hooke* v. *Mowre*, 17 Iowa, 202. This is for the plain reason, that in such case, the prior conveyance is not only fraudulent, but would, in fact, be the means of working an actual fraud upon others should it be sustained as against the subsequent purchaser.

4. RECORD-ING ACT : record of fraudu-lent deed.     It is proper that we should briefly allude to the effect of the *recording* of the deed under which the son claims.

Under the circumstances of this case (the son's deed being actually fraudulent, the father being in possession, claiming and selling the property as his own, to a purchaser, for value, without actual notice), we are of opinion, and so decide, that the *constructive notice* arising from the

record of the son's deed does not defeat the right of the subsequent purchaser to avoid an instrument that would otherwise work a fraud upon him.

To this effect are all the authorities, many of the cases going much further. 1 Am. Lead. Cas., 4th ed., pp. 46, 47, and authorities cited; per KENT, Ch. J., in *Sterry* v. *Arden*, 1 Johns. Ch., 261, 270, 271; *S. C.*, 12 Johns., 536, and note, Judge SPENCER's remarks, pp. 557, 559; Story Eq., § 425 *et seq.*; *Hooke* v. *Mowre*, 17 Iowa, 195; *Gooch's case*, 5 Co., 60 *a*; *Buckle* v. *Mitchell*, 18 Ves., 111, per Sir WILLIAM GRANT. The reason being, that notice to a purchaser of a fraudulent conveyance is simply notice of a nullity, for the statute makes such conveyance absolutely void. If he knew of it, he at the same time knew it was a nullity.

It might be a very different case if the first deed, though voluntary, was fair and meritorious, intended to be and being nothing more than a reasonable provision for wife or children. In such a case our registry laws afford an additional reason for not following the staid and severe doctrine of the English courts, allowing purchasers *with* notice to avoid a prior voluntary conveyance, though *bona fide* made.

At the time when the statutes of Elizabeth were enacted there were no laws in England requiring the registry of deeds and conveyances, and hence there were greater opportunities for making secret transfers. Previous to the time of Queen Anne, there were no registry laws in England, and to this day, unless enacted recently, there are no such laws applicable to *every part of the realm*. Sugd. on Vend., 966: and seet his subject discussed by GIBSON, J., in *Lancaster* v. *Dolan*, Rawle, 231, 245.

Our statute provides (Rev., § 2220) that "No instrument affecting real estate is of any validity against a subsequent purchaser for a valuable consideration without

notice, unless recorded," and when recorded (§ 2223), "shall furnish constructive notice to all the world of the right of the grantee conferred by such instrument."

If the instrument is without validity before recorded, it is equally so after it is recorded; in other words, its registration gives it no additional efficacy, does not free it from the taint of fraud.

If the first deed, though voluntary, is free from fraud, and is duly registered, then it might well be (especially if the grantee has not allowed the grantor to remain in possession exercising the right of ownership) that the after purchaser would be bound to take notice of "the right of the grantee conferred by such instrument." Upon this subject, see *Lewis* v. *Love's Heirs*, 2 B. Mon., 345, 347; *Bank* v. *Patton*, 1 Rob. (Va.), 499, 544; *Lancaster* v. *Dolan* (leading case in Pa.), 1 Rawle, 231, 235; *Cain* v. *Jones*, 5 Yerg., 249; 1 Id., 13; *Bell* v. *Blaney*, 2 Murph. (N. C.), 171; *Ricker* v. *Ham*, 14 Mass., 137; 18 Pick., 131; *Sterry* v. *Arden*, 12 Johns., 261; *S. C.*, Id., 559.

We need not decide what would have been the effect if the plaintiff, at the time of his purchase, had had *actual* notice of the conveyance to the son; nor what would have been the effect under our recording act, if the deed to the son had been *bona fide*, and the plaintiff had purchased without actual, but with *constructive* notice of it.

As there is independent proof of actual fraud in the first conveyance, we need not discuss how far, if at all, such fraud may be presumed from the *mere fact, without more*, of a subsequent sale for value.

II. Templin, the warrantee of the plaintiff, having given the plaintiff notice to defend the action of the son,

5. PARTIES: *fraudulent conveyance.* based upon the conveyance to him by his father, this would bind the plaintiff by any verdict

which the son might recover in that action. *Chicago* v. *Robbins*, 2 Am. Law Reg. (N. S.), 529; *S. C.*, Wallace, U. S. and cases. cited; Rawle on Covenants, 242, and authorities there referred to.

The plaintiff would be liable on the covenants in his deed; and this action of the son against Templin, as it binds the plaintiff, is in effect the same as if it were against the plaintiff in person. Besides, the plaintiff is liable, for the time he occupied, to have a similar action brought against him by the son. We therefore think he is entitled to bring this bill to enjoin that action and have the validity of the son's right determined.

We have given the case, as the question is a new one in this State, a very thoughtful consideration, and are brought to the conclusion that the decree below dismissing the bill was erroneous. That decree is accordingly reversed, and the cause remanded, with directions to the District Court to enter a decree as prayed in the petition.

Reversed.