WHITESCARVER, *et ux.* v. BONNEY.

1. WIFE'S SEPARATE PROPERTY.   The separate property of the wife, can be bound only by her own act, or that of some one authorized to act for her.
2. AGENT.   The authority of the husband to act as agent of the wife, in relation to her separate property, cannot be proved by the declarations of the husband alone.
3. FRAUD: SUBSEQUENT CREDITOR.   A creditor of the husband cannot impeach a conveyance of real estate to the wife, on the ground that it was so conveyed for the purpose of defrauding the creditors of the husband, when the conveyance was made before the debt due to such creditor was contracted.   *Aliter* when the conveyance was made with a view to defraud the creditor in a transaction contemplated at the time of the conveyance.

*Appeal from Van Buren District Court.*

MONDAY, OCTOBER 31.

ON the 25th February, 1856, complainants made their mort-

gage of certain real estate to respondent, Bonney, purport-
ing to secure to him the sum of three thousand dollars, payable
twelve months from date.   In April 1857, Bonney placed
this mortgage in the hands of the proper sheriff, with a
view to foreclose the same under chapter 118 of the Code.
Thereupon the mortgagors filed this bill transferring the
proceeding to the District Court, and setting up that the
mortgage was given to secure a contingent liability; that
one Belding as trustee for Ruddick held a trust deed for a
part of this land, under which he was about to sell; that an
injunction was obtained to restrain said sale, upon the bond
to procure which Bonney was surety, and that this mort-
gage was made to secure him against any liability resulting
from signing said bond; that said trust deed was set aside,
and that Bonney never paid anything on said mortgage, or
to discharge said injunction bond.

From the other pleadings and testimony the following
facts are established:

The mortgage was given to secure a contingent liability as
stated in the answer, and Bonney has been released from
all liability thereon.   So far as either of the complainants
had title to the land, it was in the name of the wife.   In
August 1856, the husband purchased of one Mills, two horses,
for which he was to pay $300—Bonney being his surety for
the purchase money.   At the time it was agreed that Bon-
ney was to hold this mortgage to secure him against this
further liability.   A portion of this debt was paid by a sale
of the horses, and the balance with costs, amounting to
about $130, was paid by Bonney.   The District Court dis-
missed the bill and decreed a sale of the land to pay the
amount with interest paid by Bonney on the notes to Mills.
Complainants appeal.   Other facts material will be found
referred to in the opinion of the court.

*C. C. Nourse*, for the appellants, cited 19 Vesey 478;
*Doyle* v. *White*, 26 Maine 341; 1 Royle 129; *Foster* v. *Walton*,

5 Watts 378; *Douglass* v. *Dunlap, et al.,* 10 Ohio 162 ; *Sawyer* v. *Eastwood,* 19 Wend. 314; Code of 1851, section 2410.

Joseph F. Smith, for the appellee, cited Code 1851, sections 184, 718 ; 2 Rose 138; *Ex parte* Langston, 17 Ves. jr. 225 ; *Ex parte* Hooper, 19 Ib. 477.

WRIGHT, C. J. — It is not claimed that the mortgagee, Bonney, is entitled to recover anything on account of the transaction out of which the mortgage arose.

The whole case turns upon the inquiry whether, under the circumstances, he is entitled to foreclose for the money advanced to Mills. He claims *first,* that he has established by competent evidence the agreement that the mortgage was to be thus held. *Second,* that though this agreement was made with the husband, he held the title, and could therefore bind the land. *Third,* that if he did not hold the title, he was acting as the agent of the wife, and with her knowledge and consent. *Fourth,* that if not acting as such agent, the title, if in her, was placed there with the intention of defrauding creditors.

From this statement of the appellee's argument, it is manifest that unless some one of the second and succeeding positions assumed by him are correct, it will be unnecessary to examine the first. Let it be admitted therefore, that the agreement claimed, is established, and how does the case stand. As to the second position, the facts are that the bill charges that the land was the property of the wife. The answer contains substantially this language; denies that the land was the property of the wife, says it is the sole property of the husband; was purchased with his money, and the title taken in the name of the wife, " for the sole purpose of covering up the same from the husband's creditors ; " that it is owned by the husband, that he at all times treated it as his own, and that respondent understood that although the title was vested in the wife, the land was in fact owned by

the husband.    This language we understand to be an admission, clear and explicit, that the title was in the wife.  *Prima facia*, therefore, it could only be bound by some act of hers or by some person acting for her.    Hence it is not true that the title was in the husband; and appellees second proposition fails him.

We next inquire whether he acted as her agent, with her knowledge and consent, having power to make this agreement.    Complainants file separate replications in which they expressly and specifically deny the agency alleged in the answer, or that the land was paid for by the husband.    On the contrary it is stated that it was paid for by the wife, from her own means, and that in taking the title in her name, there was no intention to defraud creditors.

If respondent may have the benefit of what the husband repeatedly said, and if his admissions bind the wife, then the agency is fully made out.    Take this away however, and the proof amounts to nothing.    And it is too plain a proposition to admit of controversy, or require argument, that respondent cannot prove the agency by the husband's admissions from what he said, and therefore prove an agreement made by him, that shall bind the lands of the wife.    Such a rule would render unsafe all titles and all property.

Then as to the proof aside from their admissions, it consists, *first*, in the fact testified to by one witness that complainants lived upon the land, and the husband transacted the business, and treated the farm as his own; and *second*, the testimony of the sheriff, one of the respondents, who, it seems, sometime after the commencement of this suit, was at complainant's house, the husband was absent, and the wife told him that she did not know anything about the matter; that he (witness) would have to wait for his return as he attended to all the business; and witness understood her to say that the mortgage covered Bonney's liability for giving security to Mills.

Aside from the objection that respondent is endeavoring to establish an authority to convey or incumber land, by

parol, the proof, granting it to be admissible, is entirely too meager to overcome the sworn denial contained in the replications. The first item of proof amounts to nothing. It may conduce to show that the husband was acting as the agent of the wife in carrying on the farm. And yet it no more proves this than that he was cultivating land to which as the husband, being in possession, he was entitled to the rents and profits. But if it did sustain the first rather than the second assumption, it by no means follows that under such an agency he would have a right to mortgage the land. And giving to the testimony of the sheriff, all the weight that can possibly be claimed for it, the denial of the replication would not be overcome.

Was the title taken in the name of the wife for the purpose of defrauding creditors, and if so, will this fact avail respondent? Passing the first part of the inquiry, we remark that we know of no ground upon which the fact claimed can aid the mortgagee. He is a creditor or incumbrancer *subsequent* to the conveyance to the wife, and with full knowledge that she held the title. If he knew that she held it for the fraudulent purpose stated, then he is in no condition to take advantage of it. If he did not, he is in no better condition, for in any event, it is a *prior* and not *subsequent* creditor, that can take advantage of the fraud. The subsequent creditor acts with a full knowledge of where the title is vested, and cannot complain of any previous fraud. Of course we speak of those cases, where it is not shown that the fraud was perpetrated with a view to defraud a creditor in a transaction contemplated at the time of taking the title by the wife, or other grantee.

Decree reversed and injunction made perpetual.