*Dutton* and *L. L. Phelps,* for the plaintiff.

*Tyler* and *Willcox,* for the defendant.

———————— •+•• ————————

## JARED E. REDFIELD *vs.* SARAH M. BUCK.

The declarations of a voluntary grantor, made in the absence and without the knowledge of the grantee, that he was insolvent when the deed was made, are not admissible against the grantee, for the purpose of showing the conveyance to be fraudulent against creditors.

But where the grantor remained in possession and continued to manage the property precisely as before, and the question was whether he was occupying as owner or as agent of the grantee, it was held that his acts of ownership were admissible in evidence against the grantee, and that his declarations made in connection with them were also admissible as explanatory of them.

Redfield *v.* Buck.

A conveyance by an insolvent of all, or substantially all, his property, in consideration of love and affection only, is constructively fraudulent against subsequent as well as existing creditors.

A new trial will not be granted for the improper admission of evidence where it is clear that the case could not have been affected by it.

Where a motion for a new trial was taken to the "next term" of the Supreme Court to be holden in the county, without describing the term, which next term was the September term 1867, to which term alone the motion could by law be taken, and the clerk of the court in his record had described the term to which it was taken as "the next term to be holden on the 2d Tuesday of February, 1868," at which latter term he entered the case on his docket, it was held, on a motion made to strike the case from the docket, that the motion for a new trial was to be regarded as taken to the September term, and the clerk's entry as an error, and that the case should be treated as if it had been entered in the docket of the September term and properly continued.

EJECTMENT, brought to the Superior Court in Middlesex county, and tried to the jury on the general issue before *Phelps, J.*

On the trial the plaintiff claimed title to the demanded premises by virtue of the levy of an execution issued on a judgment obtained against William J. Buck, the defendant's brother, in the year 1865, on certain promissory notes made by him in 1859. The defendant claimed title under two quit-claim deeds, executed and delivered to her by Buck, in December 1853.

The plaintiff claimed, and offered evidence to prove, that at the time of the execution of the deeds, and all the time since 1837, Buck was deeply embarrassed and insolvent; and to prove such insolvency, under the claim that the deeds were without consideration and voluntary, offered evidence of Buck's declarations made in the absence, and, so far as appeared, without the knowledge of the defendant, from time to time between 1853 and 1858, that he was insolvent, that he could hold the title to no property in his own name, that he failed in 1837, that old judgments which he could never pay were outstanding against him, and that he was insolvent at the time the deeds to the defendant were executed ; and also the fact

that he subscribed in the name of the defendant for stock in a manufacturing company in this state without her knowledge. To the admission of all this evidence the defendant objected, but the court admitted it.

The defendant claimed that, after the execution and delivery to her of the deeds, Buck managed the property only as her agent. To contradict this claim the plaintiff offered evidence to prove that in the year 1859 or 1860, in the absence of the defendant, he claimed and treated and offered to sell the premises as his own. To the admission of this evidence the defendant objected, but the court admitted it.

The plaintiff claimed that the deeds to the defendant were voluntary and executed when the grantor was largely indebted and utterly insolvent, and that they embraced all the visible estate and property the grantor then possessed; and that, unless satisfactorily explained, these facts were sufficient to make the conveyance to the defendant, by legal implication, fraudulent and void as to the subsequent creditors of the grantor.

The defendant admitted the insolvency of the grantor, and that to her knowledge he possessed no other property, but claimed to have proved that, a maiden sister of the grantor, she was dependent upon and supported by him, and most of the time residing with and in his family, and that a more than ordinary affection existed between them; that in 1833 or 1834, in consideration of love and affection for her and for the purpose of making her more independent, he transferred to her several shares of the stock of a manufacturing company, located at Elizabethport, New Jersey, which he claimed were worth $2,000 or $3,000; that he was then, as she understood from him and believed, in easy pecuniary circumstances, and worth some $50,000; that she held these shares of stock till 1837, during which time no dividends were paid upon it; that the grantor then became insolvent, and at his request she then re-transferred them to him, with liberty to him to sell or otherwise dispose of them and apply the avails to his own use, which she supposed he did, though she had no personal knowl-

edge of the fact, or of the amount, if anything, which he received therefor; that at the time of such re-transfer it was agreed and understood by and between them that he should at some time thereafter reimburse her the value of the stock; that between 1837 and 1853, during which time he continued to support her, he often spoke of and renewed his promise to do so; that the deeds in question were executed and delivered to her for that purpose, and that only; and she claimed that upon these facts the deeds were not voluntary, but given for a valid and valuable consideration, and that in the absence of proof of an actual fraudulent intent there was no legal presumption or implication that the deeds were fraudulent and inoperative against subsequent creditors of the grantor.

The plaintiff claimed, in opposition to these claims of the defendant, that the gift of stock to the defendant by Buck was cancelled by the subsequent re-transfer to him, and that, if this was not so, the money expended by him in her support was more than sufficient to discharge the debt if any in fact had existed; that the defendant had entirely failed to show that the stock was of any value, or that Buck ever sold it or realized anything from it, or that any debt arose out of the re-transfer, or that any was cancelled or discharged, or that any settlement was made when the deeds were delivered, or that the defendant ever had any account or memorandum whatever of the transaction between Buck and herself. The plaintiff also claimed that the deeds were executed and delivered by Buck, with the corrupt and fraudulent purpose to delay, hinder and defeat existing and subsequent creditors; and that the defendant had knowledge of and participated in such purpose, and that she had no knowledge of their execution until after they were recorded; that Buck was insolvent and could hold no property in his own name; that he continued in the possession and management of the premises after the execution and delivery of the deeds as before; and that the defendant received and held them upon a secret agreement and trust, with and for the benefit of the grantor. The defendant admitted that she had no knowledge of the execution

of the deeds until after they were recorded, but denied any knowledge of or participation in any corrupt or fraudulent intent of the grantor to hinder, delay or defeat any creditor, and also denied that she received and held the premises upon any secret understanding or trust with the grantor, and claimed that the possession and management of the premises by the grantor after the execution of the deeds was under a power of attorney from her and as her agent.

The counsel for the defendant requested the court to instruct the jury, that if they should find that the deeds were given to her in consideration and payment of the indebtedness claimed by her, they were valid as against the plaintiff, although the grantor was insolvent at the time; also, that if the jury should find that the conveyances were made for the purpose of defeating the claims of the grantor's existing creditors, and that he was then insolvent, they were not void as against the plaintiff, unless they were executed by the grantor and received by the defendant with a fraudulent design on the part of both, to defraud those who might thereafter become the creditors of the grantor; also, that if the deeds were given in consideration of love and affection alone, when the grantor was insolvent, and no secret trust or other actually fraudulent intent to defeat future creditors was proved, the defendant would be entitled to hold the property conveyed against the plaintiff.

The court instructed the jury that there were two classes of conveyances, which as to subsequent as well as antecedent creditors were fraudulent and void. One, when they were executed either with or without consideration, with an intent at the time to so dispose of the property conveyed as to place it beyond the reach of any creditors which the grantor then had, or might thereafter have, and delay and defeat them in the collection of their debts, when the fraudulent intent was known to and participated in by the grantee. The other, when they were made at a time when the grantor was largely indebted and insolvent, and the property conveyed was all or nearly all the grantor possessed, and the conveyances were

Redfield *v.* Buck.

wholly gratuitous and without other consideration than love and affection. That the latter did not require proof of an actually corrupt and fraudulent intent like the former, but were constructively fraudulent by implication of law arising from the facts of insolvency and the want of other consideration, and their effect, if permitted, would be to defeat the claims of those who should subsequently become creditors of the grantor. The court reviewed at length the evidence and claims of the parties, and instructed the jury that if they found from the facts proved that the defendant's deeds were embraced in either of these two classes, their verdict should be for the plaintiff, but if otherwise, for the defendant.

The jury rendered a verdict for the plaintiff, and the defendant moved for a new trial for errors in the rulings and charge of the court.

When the case came up for argument in this court, *Willcox,* for the plaintiff, moved that it be stricken from the docket on the same ground on which the court had just ordered the next preceding case of *Phelps* v. *Norton* stricken from the docket, stating that the facts were precisely the same, and claiming the benefit of the ruling there made against him. It appeared by the record of the clerk that the case was tried in the Superior Court at its September term, 1867, and that the motion was taken to "the next term of the Supreme Court of Errors to be holden on the 2d Tuesday of February, 1868." The "next term" of the Supreme Court after the trial, to which alone the motion could by law be taken, was the September term, 1867, which was holden after the adjournment of the September term of the Superior Court, and the February term, 1868, was one term later. It appeared, however, that the motion itself stated the term to which it was taken simply as the "next term of the Supreme Court of Errors," without stating the time when it would be holden, and the court held that the motion itself was properly taken, and could not be vitiated by the entry of the clerk, which would be presumed to be erroneous, and that the case should be

treated as if it had been entered in the docket of the September term and properly continued to the present term.

*C. Ives* and *Alling*, in support of the motion for a new trial.

1. The declarations made by the grantor of the defendant, that he was insolvent, were uttered out of court, free from the searching scrutiny of a cross-examination, were mere hearsay, not under oath, and not made in the presence of the defendant, and were not admissible to prove the claim of the insolvency of the grantor, especially in a case where he was not interested, and where his declarations might injure the rights of the defendant. *Beach* v. *Catlin*, 4 Day, 284; *Barrett* v. *French*, 1 Conn., 354, 365; *Pettibone* v. *Phelps*, 13 id., 450; *Partelo* v. *Harris*, 26 id., 480; *Bartlet* v. *Delprat*, 4 Mass., 702; *Bridge* v. *Eggleston*, 14 id., 245, 251.

2. The testimony offered to contradict the claim of the defendant, that the grantor was her agent to take care of the property in dispute, was inadmissible. 1st. Because the testimony was hearsay, and related to conversations at which the defendant was not present. 2d. If the grantor were alive he might have been called to disprove the agency, if the fact were so. His declarations out of court would not have been admitted for this purpose. His death cannot now make them admissible. 3d. The declarations of the grantor and his conduct were not admissible on the ground of agency, unless he was conducting himself at the time as the defendant's agent, and clearly he was not in offering to sell the property as his own.

3. The testimony as to the subscription of the stock was wholly immaterial, open to the objection of raising collateral issues and calculated to mislead and prejudice the jury. 1 Greenl. Ev., § 52.

4. The court should have distinctly charged the jury, in compliance with the defendant's request, that, if they should find the deeds of 1853 to have been given to the defendant in consideration of the stock transferred by her to the grantor in 1837, in pursuance of the agreement then made between

them, the deeds would not be voluntary, but founded upon a valuable consideration. The jury under the charge might have found and probably did find that the deeds in fact were given under the circumstances indicated, but yet have supposed, from the lapse of time or other immaterial circumstances in the case, including the claim that he had supported her, that the deeds should still be regarded as voluntary. *Dygert* v. *Remerschnider*, 32 N. York, 629.

5. Voluntary conveyances, though without consideration, are valid as against subsequent creditors, unless a fraudulent *intent in fact*, and not as a matter of presumption, is found by the jury, on the part of both grantor and grantee, to delay, hinder and defraud such creditors. *Lane* v. *Kingsbury*, 11 Miss., 402; *Pepper* v. *Carter*, id., 540; *Bullitt* v. *Taylor*, 34 id., 708; *Stiles* v. *Lightfoot*, 26 Ala., 443; *Williams* v. *Banks*, 11 Maryl., 198; *Ward* v. *Hollins*, 14 id., 158; *Waterson* v. *Wilson*, 1 Grant's Cas., 74; *Bank* v. *Ballard*, 12 Rich. (Law), 259; *Horn* v. *Volcano &c. Co.*, 13 Cal., 62; *Nicholas* v. *Ward*, 1 Head, 323; *Enders* v. *Williams*, 1 Met. (Ky.) 346; *Todd* v *Hartley*, 2 id., 206; *Snyder* v. *Christ*, 39 Penn. S. R., 499; *Ward* v. *Enders*, 29 Ill., 519; *Howe* v. *Ward*, 4 Greenl., 195, 207; *Reed* v. *Woodman*, id., 400; *Thacher* v. *Phinney*, 7 Allen, 146; *Benton* v. *Jones*, 8 Conn., 186; *Converse* v. *Hartley*, 31 id., 372; 1 Story Eq. Jur., §§ 355—366. The statute expressly provides that the conveyance shall be void only as against those whose debt or duty is fraudulently intended to be avoided. Gen. Statutes 480, sec. 1. Subsequent creditors had no right to trust the grantor on the credit of this property, because the land records plainly showed that he had no title. *Williams* v. *Banks*, 11 Maryl., 198; *Converse* v. *Hartley*, 31 Conn., 372, 377; *Tibbals* v. *Jacobs*, 31 id., 428. Besides, the creditors of the grantee have trusted her on the faith of her title, and the law ought not to allow them to be defeated, as against subsequent creditors of the grantor, unless an actual intentional fraud was proved to have been entertained by both parties, to hinder and defraud such subsequent creditors.

*Culver* and *Willcox*, contra.

HINMAN, C. J.   This was an action of disseizin in which both parties claimed title under Wm. J. Buck—the plaintiff by virtue of the levy of an execution and the defendant under deeds from him—and the question in the case was, whether those deeds were operative to convey the title against the claim of the plaintiff, a creditor of the grantor.

On the trial below questions in respect to the admissibility of evidence were made and decided, which will first be considered.   The claim of the plaintiff was that the deeds to Sarah M. Buck, the defendant, from her brother, were made without any valuable consideration therefor, and at a time when he was largely indebted, and was in fact insolvent, and being entirely voluntary were void against his creditors ; and he claimed to prove the insolvency of Buck by his declarations, made in the absence and without the knowledge of his sister.

We know of no principle of law upon which this evidence was admitted.   Still, as it was offered and received only for the purpose of proving the insolvency of the maker of the deeds at the time they were executed, and was not claimed to be evidence for any other purpose whatever, and as this insolvency at that time was abundantly shown by other evidence in the case, and was even expressly admitted by the defendant, who testified to it, and that she had no knowledge that he possessed any other property at the time the deeds were made, we cannot perceive how the evidence could have prejudiced her case in the estimation of the jury, and on this ground alone we do not advise a new trial on account of the admission of it.

Again, Buck, the maker of these deeds to his sister, appears to have managed the property after the deeds were made, in the same manner that he had done while he was the real as well as the apparent owner of it, and to rebut the defendant's claim, that his continued management of it was in the capacity of agent for her, and not as owner of it, the plaintiff was permitted to prove that, in the year 1859 or 1860, he claimed the property as his own, and as such offered to sell it.

This claim of Buck to own the property, and his offer to sell it, at a time when, on the trial, the defendant claimed

that he was managing it as her agent, but as the plaintiff claimed as owner, and just as he had managed it before the execution of the deeds, was in our opinion admissible for the purpose of proving that he was in fact the owner notwithstanding the deeds to her. His continued management showed, as remarked by Judge Storrs in *Avery* v. *Clemons*, 18 Conn., 309, those acts which naturally and usually flow from and accompany the ownership of property and therefore tend to evince such ownership. But the acts themselves were to some extent equivocal, being equally consistent with the defendant's claim of agency, and the plaintiff's claim of ownership in the party thus managing the property. And his declarations, accompanying his management, were admissible for the purpose of showing the character of it. They were therefore proper and necessary in order to prove the character of his possession and management, and except in the immaterial circumstance that the possession in this case was of real estate, while in *Avery* v. *Clemons* it was of personal property, the cases can hardly be distinguished, and there was therefore no error in admitting these declarations in evidence.

But the charge to the jury is objected to. The plaintiff's claim was, that as the deeds to the defendant were voluntary, and executed when the grantor was largely indebted and insolvent, and as they embraced all his visible property, these facts unexplained were sufficient to render the conveyances fraudulent and void against him, a subsequent creditor. The defendant claimed that if the deeds were given in consideration of love and affection alone, when the grantor was insolvent, and no secret trust or actually fraudulent intent to defeat future creditors was proved, the defendant would be entitled to hold the property against the plaintiff, and she requested the court so to charge the jury. The court recognized the plaintiff's claim as substantially correct, in charging the jury that when conveyances were made by a grantor who was largely indebted and insolvent, and the property convey-

ed was all or nearly all he possessed, and the conveyances were wholly gratuitous and without other consideration than love and affection, they were void as to subsequent as well as to antecedent creditors. The doctrine of the charge is, that a gift by an insolvent of all his property, in consideration of love only, is constructively fraudulent against creditors, without reference to the time when the indebtedness arises; and it would certainly seem, upon general principles, and without reference to decided cases, that this must be so. If a man must be just before he is generous, it clearly ought to be so. One largely indebted and insolvent, who gives away his only means of satisfying in part the claims of his creditors, must be either incapable of managing his affairs and incompetent to make a conveyance, or he must do it under some secret hope or expectation of benefit to himself from the use of the property, or some equivalent for it, after the conveyance; and in this case the transaction is corruptly fraudulent. That such a conveyance must directly tend to hinder, delay, and defeat creditors is too clear for argument. And the grantee in such a conveyance, knowing, as this grantee did, the pecuniary condition of her brother, and that the property conveyed was his only visible means of paying his debts, must have received the deeds as a merely colorable transfer; and most probably would have conveyed it back to him on request, as she appears to have done with the manufacturing stock, which had also been conveyed to her. If then fraud is an inference of law from facts and intents, as was said in *Pettibone* v. *Stevens*, 15 Conn., 26, it would seem from the conceded facts in the case that the plaintiff must recover this property. It can not be necessary to review the numerous cases on this subject. The remark of Judge Washington, in *Ridgeway* v. *Underwood*, 4 Wash. C. C., 137, contains law enough to dispose of the case. " So," says he, " if the grantor at the time the deed was made, was indebted to the extent of insolvency, or perhaps of great embarrassment, so as to create a reasonable presumption of a fraudulent design, the deed may be impeached even by a subsequent creditor, unless

the presumption is repelled by showing that such prior debts were secured by a provision in their favor in the deed itself. "

We do not advise a new trial.

In this opinion the other judges concurred.