## BARHYDT & CO. v. PERRY ET AL.

1. **Partnership**: VOLUNTARY CONVEYANCE: CONSTRUCTIVE FRAUD. Where a member of a partnership, which was largely indebted, made a voluntary conveyance of all his individual property, but without any purpose to defraud the firm creditors, such conveyance would be constructively fraudulent, and liable to be avoided.

2. ——: ——: SUBSEQUENT CREDITORS. Where the conveyance was voluntary, and included all of the individual property of one member of a partnership, which was largely indebted at the time, subsequent creditors whose means have been used to pay off the prior indebtedness will be subrogated to the rights of the prior creditors, and they may avoid such conveyance.

*Appeal from Page Circuit Court.*

THURSDAY, DECEMBER 15.

THE plaintiffs, who hold an unsatisfied judgment against the defendant, A. W. Perry, for $731.41, bring this action to set aside a conveyance of two hundred acres of land from A. W. Perry to his wife L. A. Perry, and to subject it to the satisfaction of said judgment. The plaintiffs allege that the conveyance was made without consideration, and with intent to defraud creditors, and is void.

The court dismissed the plaintiffs' petition. The plaintiffs appeal. The material facts are stated in the opinion.

*McPherrin Bros.*, for appellants.

*W. W. Morsman*, for appellees.

DAY, J.—The evidence establishes the following facts: The defendant, A. W. Perry, had a stroke of paralysis in 1876, which weakened him somewhat, both mentally and physically. In March, 1878, A. W. Perry formed a copartnership with E. Stoney, who was then engaged in mercantile business in Clarinda. The stock then inventoried $2,900, and the debts were about $1,600. This partnership continued until the first of May, 1879. In the meantime the stock had increased about one-third, and the debts had also increased. On the first of May, 1879, the partnership was dissolved, Stoney buying Perry's interest, and agreeing to pay therefor $500, and to assume all the debts of the firm. At the time of this sale no inventory was taken, but both parties supposed the assets were sufficient to pay the firm debts. During the existence of this copartnership, on account of the ill health of Perry, the active management of the business was intrusted to Stoney. Perry did not know how much the firm was indebted at the time of the dissolution. Stoney testifies that the indebtedness was about $3,000, but Perry testifies that he has since discovered the indebtedness amounted to $6,000 or $7,000, and that he has paid indebtedness of the firm to that amount. Immediately upon the dissolution of the firm, A. W. Perry conveyed, without consideration, to his wife, the property in controversy, worth $5,000, and a farm in Michigan valued at $4,800, and also two mortgages, one for $1,400, and one for $700. These conveyances included all his property except a span of ponies and a wagon worth $100. At the time of making these conveyances he was not individually indebted. The defendant, A. W. Perry, testifies that in making these conveyances he did

not intend to hinder, delay, or defraud any creditor of Stoney & Co., or of his own, but, that being in poor health, and in danger of another stroke of paralysis, his purpose was to confer all his property upon his wife whilst he was possessed of mental capacity to dispose of it, and that he intended the conveyance to be in lieu of a will. Soon after Perry retired from the firm reports detrimental to the financial standing of Stoney were received at the Commercial Agency, and the outstanding indebtedness was pressed for collection in a manner which threatened the destruction of the business. Perry was urged by Stoney and the plaintiffs' agent to come back into the business for the purpose of restoring confidence in the firm, and of saving what Stoney had agreed to pay him for his interest. Yielding to their solicitations the partnership was renewed on the 29th day of May, Perry surrendering the note which he had received for his interest. At this time the firm was indebted to the plaintiffs. At the time of the reformation of the partnership, A. W. Perry did not inform the agent of plaintiffs, nor Stoney, that he had made a conveyance of all his property, although the conveyances of the real estate were recorded. After the reformation of the partnership the plaintiffs, supposing A. W. Perry to still own the real estate in question, sold to the firm, and to A. W. Perry, goods for the store, for which debts were contracted, which, on the fourth day of March, 1880, were merged in the judgment which the plaintiffs now seek to satisfy out of the real estate in question. Perry and Stoney again dissolved partnership September 8, 1879, Perry continuing the business, and assuming the debts of the firm. Perry continued the business until November, 1879, when he sold out to Vance, invoicing the stock at $2,900. Since the debts which form the basis of this suit were contracted, all the debts which existed when the conveyance in question was made have been discharged, partly from the proceeds of the store, and partly from a loan secured by a portion of the property conveyed to L. A. Perry.

I. The defendant, A. W. Perry, believed that the firm assets were sufficient to pay the firm liabilities. The firm debts were assumed by Stoney, and he was jus-

*1. PARTNER-SHIP: voluntary conveyance; constructive fraud.*

tified, we think, in believing that Stoney would discharge the firm liabilities. There was no purpose to defraud the firm creditors, and the conveyance was not actually fraudulent. Still, as A. W. Perry was liable to the firm creditors, and he conveyed away all his property without consideration, the conveyance, as to such cred-itors was constructively fraudulent, or fraudulent in law, and liable to be avoided. See Story's Equity, Sec. 355. In *Hook v. Mowre*, 17 Iowa, 195, after a full citation of the authorities, the rule was announced that on the mere ground that a con-veyance is voluntary, where the grantor has no fraudulent views, a *subsequent* creditor cannot impeach it. See, also, *Whitescarver v. Bonney*, 9 Iowa, 480; *Fifield v. Gaston*, 12 Iowa, 218; *Lyman v. Cessford*, 15 Iowa, 229; Story's Equity Jurisprudence, section 361, and cases cited.

II. Another principle, however, is involved in this case. A. W. Perry did not, before contracting the debts to the plaintiff, discharge the debts which existed at the

*2. ——:——: subsequent creditors.*

time he made the voluntary conveyance. On the contrary, with the debt which he contracted to the plaintiffs he augmented his stock of goods, and acquired the means, in part, of paying off the existing creditors. The debts were, in effect, to the extent of the property which he received from plaintiffs, simply transferred from existing creditors to the plaintiffs. The debts were not really discharged, but a new creditor was substituted. Under such circumstances it has been held, and very properly, we think, that the subsequent creditors are entitled to the same rights as those of the cred-itors whose debts their means have been used to pay. In Bump on Fraudulent Conveyances, pages 315, 316, it is said: " The mere fact that the prior debts have been paid off will not alone render the transaction valid, though it is entitled to

great weight. A great deal will depend upon the mode in which such debts are paid. Paying off one debt by contracting another, is not getting out of debt. Proving, therefore, that the prior debts have been paid off is doing nothing, if in doing so the donor has contracted others to an equal amount, and is not sufficient. \* \* \* In such instances the subsequent creditors are subrogated to the rights of the creditors whose debts their means have been used to pay. Any other rule would simply permit the debtor to take the property of subsequent creditors, and give it to the donee."

The following authorities fully support the foregoing doctrine: *Paulk v. Cook*, 39 Conn., 566; *McElwee v. Sutton*, 2 Bailey (S C.), 128; *Savage v. Murphy*, 34 N. Y., 508; *Mills v. Morris*, 1 Hoffman, 419; *Richardson v. Smallwood*, Jacob's Reports, 557.

As the conveyance was voluntary, and included all of A. W. Perry's property, who was largely indebted at the time, and these debts have been paid off, in part, with the proceeds of property for which the debt to plaintiffs was contracted, and an old debt due to the plaintiffs was simply transformed into one subsequent to the conveyance, we are of opinion that the conveyance in question, as against the plaintiffs, is constructively fraudulent, and that it cannot be supported.

REVERSED.