MASHAW *v.* MOSLEY.

4-4693

Opinion delivered June 14, 1937.

Appellant *pro se.*

*Arnett & Shaw, Robt. J. White* and *Ray Blair,* for appellee.

HUMPHREYS, J.   On the fourth day of March, 1929, T. A. Mashaw and others incurred an indebtedness to Ed Mosley and gave him a note for same.  The note was not paid at maturity and suit was brought on it in the circuit court of Logan county, northern district, and judgment, including interest, amounting to $1,446 in all was obtained on the seventh day of January, 1934.  Execution was issued thereon and returned *nulla bona.*

Suit was then brought by E. Mosley in the chancery court of said county and district to set aside a bill of sale executed by T. A. Mashaw to appellant, his wife, to an undivided half interest in nine thousand square feet of land on which the Kalamazoo Cotton Gin was located, on the ground that the conveyance or attempted conveyance thereof was without consideration and void, and made with the intent to defraud his creditors.  The bill of sale is as follows:

"BILL OF SALE

"Know All Men by These Presents:

 "For and in consideration of the sum of $1 and other considerations in hand paid by Lizzie Mashaw, I,

T. A. Mashaw, do hereby grant, bargain, and sell to the said Lizzie Mashaw, my wife, my undivided interest in and to 9,000 square feet of land on which is located the Kalamazoo Cotton Gin in township 8 north, range 26 west, northern district of Logan county, Arkansas, subject to vendor's lien of $3,000 held by August Bartsch Estate. I hereby warrant the title thereto, except as to said vendor's lien to be free from all liens and claims whatsoever.

"Executed in duplicate on this August 21, 1933.

"T. A. Mashaw."

This bill of sale was acknowledged in due form and recorded in book K at page 89 in the record of chattel mortgages in said district and county. By reference to the bill of sale it will be seen that the property had a lien against it for the balance due on the purchase money in favor of August Bartsch Estate, from whom it had been bought. There was no assumption of this debt by appellant. It was subsequently paid out of the earnings from the operation of the Kalamazoo Cotton Gin which was operated by T. A. Mashaw and T. R. Smith, Jr., who owned the other half interest in the property. At the direction of T. A. Mashaw or his attorney and T. R. Smith, Jr., the property was conveyed by warranty deed by Bertha Bartsch, widow, and all the heirs of August Bartsch to appellant and Catherine Smith, the wife of T. R. Smith, Jr. The complaint, also, alleged that the deed was made to appellant, in furtherance of T. A. Mashaw's plan and effort to prevent his creditors from reaching the property and subjecting it to the payment of their claims against him. The prayer of the complaint is for a cancellation of the bill of sale and deed and to subject the property to a payment of plaintiff's judgment. During the pendency of this suit T. A. Mashaw filed a voluntary petition in bankruptcy in the United States court for the western district of Arkansas on the seventh day of January, 1936, and on March 27, 1936, Guy Conley, who was appointed trustee of the estate of T. A. Mashaw, was made a party plaintiff and adopted the complaint of Ed Mosley.

Answers were filed denying the material allegations of the complaint and the case was heard on the pleadings and evidence adduced, by the chancery court, resulting in a decree canceling the instruments and subjecting T. A. Mashaw's half interest in the property to the payment of his creditors, from which is this appeal.

Although T. A. Mashaw testified that he transferred the property to his wife in good faith and without any intent of defrauding his creditors, yet he was forced to admit on cross-examination that he conveyed his equity in the property to his wife without consideration at a time when he owed large amounts for which he was being pressed by them for payment and in doing so denuded himself of the only property he had with which to pay them.

His wife knew of his indebtedness and testified that she bought the property for the purpose of helping her husband out. Since she paid him nothing for it with which to pay his creditors it is hard to understand just how she intended to help him out unless it was an effort on her part to prevent his creditors from subjecting the property to the payment of his debts. His explanation is that by conveying it to his wife he could operate the gin as her agent and draw a salary of about $600 a year, whereas, if he turned it back to the Bartsch estate in payment of the purchase money he would lose his job. He testified that he paid himself a salary of $600 a year and the evidence reveals that in addition he made enough out of the operation of the gin to pay the balance of the purchase money due the Bartsch estate. Of course, if these conveyances are upheld his wife will own and hold the property to the exclusion of his general creditors. The great weight of the evidence reflects that he attempted to give his equity in this property to his wife when he was insolvent. The law is that a man must be just before he is generous. *Rudy* v. *Austin,* 56 Ark. 73, 19 S. W. 111, 35 Am. St. Rep. 85. This court said in the case of *Brady* v. *Irby,* 101 Ark. 573, 142 S. W. 1124, Ann. Cas. 1913E, 1054: "The question then presented is whether the voluntary conveyance of this stock, thus made by the husband to the wife, is valid as against his

creditors. This is largely a question of fact, depending upon the financial condition of the husband at the time the gift was made. It has been held that if the donor owes no debts at the time the gift is made, or if his debts are small in amount in comparison with the properties he then owns, and after such gift he retains property amply sufficient to pay all debts then existing against him, the gift made under such circumstances will be valid. But it is, also, well settled that a voluntary transfer of property by one in debt is presumptively fraudulent as to creditors then existing; and if the debtor is at the time of such gift insolvent, or if the gift is of such amount, or made under such circumstances that it will hinder or delay, or defraud existing creditors of such donor, then such voluntary conveyance, therefore, becomes conclusively fraudulent and invalid as to such existing creditors.''

Appellant contends that the decree should be reversed because the value of his equity in the property did not exceed $500 and, as a married man and the head of a family, he was entitled to claim that much personal property as exempt from the claims of his creditors and that a transfer of that much of his personal property could not be a fraud upon them. These conveyances indicate that this property is real estate, and it was not his homestead, but if personal property the evidence shows that it was worth more than $500. He earned out of its management $600 a year salary and in addition made enough in the operation of the gin to pay the vendor's lien. It was certainly worth more than $500 if in the operation thereof he earned and made this much money out of it. He paid much more than $500 for his half interest in the property.

No error appearing, the decree is affirmed.